UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) | Criminal No.  22cr10110 |
| | ) | |
| v. | ) ) | Violation: |
| | ) | |
| ADLEY BERNADIN, | ) ) | Count One: Wire Fraud (18 U.S.C. § 1343) |
| | ) | |
| Defendant | ) ) | Forfeiture Allegation: (18 U.S.C. § 981(a)(1)(C) and |
| | ) ) | 28 U.S.C. § 2461) |
| | ) | |

INFORMATION

At all times relevant to this Information:

General Allegations

1.     Defendant ADLEY BERNADIN, was a resident of Stoughton, Massachusetts.

2.     La Salette Angel Home Care LLC ("La Salette") was a purported home health care business.  BERNADIN incorporated the business with the Massachusetts Secretary of State on June 27, 2017.  BERNADIN dissolved La Salette on December 10, 2020.

3.     Defendant controlled a business checking account in the name of La Salette maintained at Santander Bank (the "La Salette Santander Account").

The Paycheck Protection Program

4.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses,

1

through a program referred to as the Paycheck Protection Program ("PPP"). PPP loan proceeds were required to be used by the business to pay certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities.

5.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the applicant business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. Such certifications required the applicant to affirm that "The [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," and that the "loan proceeds will be used only for business-related purposes as specified in the loan application" and consistent with the PPP rules. The authorized representative of the applicant was also required to certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in material respects," and "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

6.     In the PPP loan application, the applicant was required to state, among other things, the business': (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

7.     A small business' PPP loan application was received and processed by a participating lender approved by the Small Business Administration ("SBA"). If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA.

8.     Northeast Bank was a financial institution based in Maine and was an SBA-approved participating lender of PPP loans.

<u>The Scheme to Defraud</u>

9.     Beginning in or about April 2020 and continuing through in or about May 2020, within the District of Massachusetts and elsewhere, BERNADIN, together with others known and unknown to the United States Attorney, knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud Northeast Bank and others as to material matters, and to obtain money and property owned by and in the custody of and control of Northeast Bank and others by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

10.     In May 2020, BERNADIN submitted, and caused to be submitted, to Northeast Bank a loan application dated May 2, 2020, signed by BERNADIN, and supporting documentation, for a PPP loan in the amount of $419,833 for La Salette (the "La Salette PPP Loan Application"), for the stated purpose of paying payroll for La Salette.  In the La Salette PPP Loan Application, BERNADIN knowingly made the following false and fraudulent statements, among others:

    a.     BERNADIN falsely represented that applicant La Salette had 4 employees and an average monthly payroll of $175,200, when, in fact, as BERNADIN then knew, to

3

the extent that La Salette engaged in any business, it had fewer employees and a
substantially lower payroll;

b.  BERNADIN falsely represented that applicant La Salette was in operation as of
February 15, 2020, and had employees for whom it paid salaries and payroll taxes
using Employer Identification Number ("EIN") xx-xxx7422, when, in fact, as
BERNADIN then knew, EIN xx-xxx7422 was not issued by the IRS until April
15, 2020;

c.  BERNADIN falsely represented that applicant La Salette with EIN xx-xxx7422
had paid the substantial payroll expenses shown in the purported IRS Form 940
annual tax return for 2019, which BERNADIN submitted, and caused to be
submitted, to Northeast Bank as proof of payroll expenses paid by La Salette,
when, in fact, as BERNADIN then knew, La Salette had not paid such payroll
expenses, and the tax return form was fabricated and never filed with the IRS; and

d.  BERNADIN falsely certified that the funds sought in the La Salette PPP
Application would be used to retain workers and maintain payroll or make
mortgage-interest payments, lease payments, and utility payments, when, in fact,
as BERNADIN then knew, he intended to misapply and use the funds for purposes
unrelated to La Salette, including making payments to his wife, his wife's
daughter, and others with whom he had a personal relationship, as well as making
payments on his home mortgage.

11.     In reliance on BERNADIN's material false and fraudulent statements and his
concealment of material facts, Northeast Bank approved and funded the La Salette PPP Loan

Application, and thereafter on May 8, 2020, transferred approximately $419,833 in loan proceeds to the La Salette Santander Account. The wire transaction affected interstate and foreign commerce, in part because Santander Bank processed the transaction through its serves in Queretaro, Mexico.

COUNT ONE
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney charges:

12.     The United States re-alleges and incorporates by reference paragraphs 1 to 11 of this Information.

13.     Between on or about April 2020 and May 2020, in the District of Massachusetts and elsewhere the defendant,

ADLEY BERNADIN,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description | Amount |
|-------|-----------------|-------------|--------|
| 1 | May 8, 2020 | Wire transfer from Northeast Bank to the La Salette account at Santander Bank | $419,833.00 |

All in violation of Title 18, United State Code, Section 1343.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

14.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1343, set forth in Count One, the defendant,

ADLEY BERNADIN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.  The property to be forfeited includes, but is not limited to, the following asset:

      a.   a forfeiture money judgment, in an amount of $284,596.

15.     If any of the property described in Paragraph 14, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 14 above.

7

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY


By:   */s/ Benjamin A. Saltzman*
      BENJAMIN A. SALTZMAN
      ASSISTANT UNITED STATES ATTORNEY
      DISTRICT OF MASSACHUSETTS


DATE:  March 30, 2022